# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| CITY OF PONTIAC POLICE AND FIRE RETIREMENT SYSTEM, ROGER SMITH, and GEORGE ASSAD, | ) ) ) ) ) | |
| Plaintiff, | ) ) | C.A. No. 2026-0073-LM |
| v. | ) ) | |
| DAYFORCE, INC., | ) | |
| Defendant. | ) | |

Date Submitted: June 17, 2026
Final Report: August 6, 2026

## POST-TRIAL FINAL REPORT

Peter B. Andrews, David M. Sborz, Andrew J. Peach, Jackson E. Warren, Jacob D. Jeifa, ANDREWS & SPRINGER LLC, Wilmington, Delaware; Joel Fleming, Lauren Godles Milgroom, EQUITY LITIGATION GROUP LLC, Boston, MA; D. Seamus Kaskela, Adrienne Bell, KASKELA LAW LLC, Newtown Square, PA; *Counsel for Plaintiff Roger Smith.*

Ned Weinberger, Mark D. Richardson, Brendan W. Sullivan, LABATON KELLER SUCHAROW LLP, Wilmington, Delaware; John Vielandi, Jiahui (Rose) Wang, LABATON KELLER SUCHAROW LLP, New York, NY; Cynthia Billings-Dunn, ASHERKELLY LAW, Southfield, MI; *Counsel for Plaintiff City of Pontiac Police and Fire Retirement System.*

1

Kimberly A. Evans, Lindsay K. Faccenda, Daniel M. Baker, BLOCK & LEVITON LLP, Wilmington, DE; Jason M. Leviton, BLOCK & LEVITON LLP, Boston, MA; *Counsel for Plaintiff George Assad.*

Kevin R. Shannon, Berton W. Ashman, Jr., Daniel M. Rusk, IV, Justin T. Hymes, POTTER ANDERSON & CORROON LLP, Wilmington, DE; *Counsel for Defendant Dayforce, Inc.*

**MITCHELL, M.**

## I.    INTRODUCTION

This post-trial report resolves a books-and-records action brought by City of Pontiac Police and Fire Retirement System, Roger Smith, and George Assad ("Plaintiffs") under 8 Del. C. § 220 arising from the Merger in which private equity funds affiliated with Thoma Bravo, L.P. ("Thoma Bravo") acquired Dayforce, Inc. ("Dayforce" or the "Defendant").

Plaintiffs seek to inspect additional books and records to investigate potential wrongdoing in connection with the Merger. Dayforce produced records responsive to Plaintiffs' inspection demands but declined to produce others. Plaintiffs contend they are entitled to inspect additional categories of records under Section 220, while Dayforce maintains its production satisfied the statutory requirements. For the reasons that follow, the Court grants Plaintiffs' demand in part and denies it in part.

This is my post-trial final report.

## II.    FACTUAL BACKGROUND[1]

### A.    The Parties

Dayforce is a Delaware corporation headquartered in Minneapolis, Minnesota.[2] Dayforce provides cloud-based human-capital management and payroll software solutions to enterprise clients.[3] David Ossip founded Dayforce in 2009.[4] He served as CEO and Chairman of the Board and owned approximately 4% of outstanding shares at the time of the Merger.[5]

Plaintiffs City of Pontiac Police and Fire Retirement System, Roger Smith, and George Assad have been beneficial owners of shares of Dayforce common stock until the closing of the Merger.[6] Plaintiffs seek inspection of Dayforce's books and records under Section 220 to investigate potential wrongdoing in connection with the transaction.[7] Matthew Nye is a trustee of City of Pontiac Police and Fire

---

[1] The facts in this report reflect my findings based on the record developed at the half-day trial held on June 17, 2026. I grant the evidence the weight and credibility I find it deserves. Citations to the Docket are cited in the form of "D.I. __." The parties submitted joint exhibits numbered 1–103. Citations to the joint exhibits are in the form of "JX__."

[2] D.I. 28 at 2.

[3] *Id*.

[4] D.I. 13 at 5.

[5] *Id*.

[6] D.I. 28 at 2.

[7] *See generally* D.I. 1.

Retirement System, who verified the October 9, 2025 demand.[8] Roger Smith and George Assad likewise submitted declarations stating that they beneficially owned Dayforce common stock continuously since at least June 2025 and May 2025, respectively.[9] The parties do not dispute that Plaintiffs satisfied Section 220's stockholder-status requirement.

## B. The Merger

On August 21, 2025, Dayforce announced that it had entered into a definitive agreement to be acquired by entities affiliated with Thoma Bravo in a transaction valued at approximately $12.3 billion (the "Merger").[10] Under the agreement and plan of the Merger, Dayforce stockholders would receive cash consideration of $70 per share for each share of Dayforce common stock they held.[11] The Merger resulted in Dayforce becoming a privately held company after the transaction.[12]

The day after the Merger was announced, Ossip shared a post about the Merger and announced that "This will continue to be fun!!"[13] Additionally, contemporaneous news articles reported that Dayforce executives were expected to

---

[8] D.I. 1, Ex. 2, Ex. A ¶ 1.

[9] D.I. 1, Ex 3, Ex. 2; D.I. 1, Ex 1, Ex. 1.

[10] D.I. 28 at 3.

[11] *Id*. at 3–4.

[12] JX 57 § 1.01.

[13] D.I. 13 at 31.

remain and quoted Ossip saying, "I'm going nowhere."[14]  These statements prompted questions regarding whether Dayforce's senior management discussed or reached any understanding regarding post-closing roles before the Merger Agreement was executed.

On September 29, 2025, Dayforce filed its Proxy statement ("Proxy").[15]  The Proxy stated "none of [Dayforce's] executive officers . . . discussed or entered into any agreement with [Thoma Bravo] regarding [post-closing] employment" before the Merger Agreement was signed.[16]  The record reflects communications indicating Thoma Bravo's interest in retaining existing management, including references to "figure out how to back this guy[.]," and a desire to ". . . partner with the existing team[.]"[17]  The Proxy also discussed the executive RSUs and PSUs—including Ossip's—converting into "Replacement Awards," rather than being cashed out in the Merger.[18]  Plaintiffs contend these facts are inconsistent with the Proxy's disclosures and form part of the basis for their inspection demands.  On November

---

[14]  *Id.*

[15]  D.I. 15 at 22.

[16]  D.I. 13 at 31.

[17]  D.I. 17 at 12;  D.I. 15 at 13.

[18]  D.I. 13 at 35.

6

12, 2025, Dayforce stockholders approved the Merger at a special meeting of stockholders.[19]

**C.    Section 220 Demands and Dayforce's Production**

On September 30, 2025, George Assad served Dayforce with his demand, under Section 220, for inspection of books and records (the "Assad Demand").[20] The demand sought "inspection . . . to investigate possible mismanagement [or] breaches of fiduciary duty by [Dayforce's] officers [or] directors in connection with the Merger."[21]   On October 9, 2025, City of Pontiac Police and Fire Retirement System served Dayforce with its demand, under Section 220, for inspection of books and records (the "Pontiac Demand").[22]   The demand sought inspection "to investigate and assess potential misconduct, wrongdoing, [or] breaches of fiduciary duty by members of the Board and senior management in connection with [Dayforce's] agreement to be acquired by [Thoma Bravo]."[23]

On November 5, 2025, Roger Smith served Dayforce with his demand, under Section 220, for inspection of books and records (the "Smith Demand").[24]   The

---

[19] D.I. 28 at 4.

[20] *Id*.

[21] D.I. 1, Ex. 1.

[22] D.I. 1, Ex. 2.

[23] *Id*.

[24] D.I. 1, Ex. 3.

demand sought inspection "to investigate possible breaches of fiduciary duty and other misconduct or wrongdoing committed by [Dayforce's] fiduciaries in connection with the [Merger]."[25] Although the demands were served separately, they sought substantially similar categories of documents relating to the Merger process, the Board's consideration of the transaction, and the conduct of Dayforce's fiduciaries.

Between October 17 and December 24, 2025, Dayforce produced 54 documents responsive to these demands, which included formal board materials.[26] On January 8, 2026, Dayforce informed Plaintiffs that: "Dayforce certifies that, to the best of its knowledge, [its] production is complete."[27] Plaintiffs thereafter maintained that Dayforce's production was incomplete and that additional categories of books and records remained necessary to fulfill the purposes identified in their demands. This action followed.

### D. Procedural History

On January 15, 2026, Plaintiffs filed their Verified Complaint to Compel Inspection of Books and Records under 8 Del. C. § 220.[28] On February 3, 2026, the

---

[25] *Id.*

[26] D.I. 28 at 4.

[27] *Id.* at 5.

[28] *See generally* D.I. 1.

8

Court entered a Stipulation and Order.[29]  Plaintiffs seek an Order from this Court entering judgment in favor of Plaintiffs and against Dayforce as follows: Ordering Dayforce to produce: (i) informal board materials concerning David Ossip's anticipated post-closing employment; (ii) informal Board and officer-level materials concerning alleged discrepancies between the Proxy and the Board's deliberative process to fill gaps regarding discussions between management and the Board about the Merger; and (iii) short- and long-range plans and related financial forecasts.  The Court held a trial on June 17, 2026, and took the matter under advisement.[30]

## III.   ANALYSIS

### A.   Governing Legal Standard

The amended Section 220, as revised by Senate Bill No. 21 ("SB 21"), alters the categories of corporate records available for inspection and the burden of proof a stockholder must make to obtain them.  Because the scope of relief now depends on the type of records requested, the Court must proceed in stages.

First, a stockholder must satisfy Section 220(b) by submitting a "written demand under oath."[31]  When the demand seeks records beyond the stock ledger or stockholder list, the stockholder must establish three other requirements.  The

---

[29]  D.I. 28 at 5.

[30]  *See generally* D.I. 25.

[31]  8 Del. C. § 220(b)(1).

demand must (1) establish good faith and a proper purpose; (2) describe with reasonable particularity both the purpose of the inspection and the records sought; and (3) show the requested records are reasonably related to the stated purpose.[32]

Second, if those threshold requirements are met, the Court may order inspection of the statute's enumerated categories of "books and records" identified in Section 220(c).[33] If the corporation lacks specified formal records, the Court may order production of their functional equivalents, limited to materials necessary and essential to accomplish the stockholder's proper purpose.[34]

Third, requests for non-enumerated records proceed under Sections 220(g)(2)–(3). Under Sections 220(g)(2)–(3), when a stockholder seeks records outside the enumerated categories, the stockholder must show a compelling need and prove by clear and convincing evidence that the specific records are necessary and essential to further the stockholder's proper purpose. [35]

The Court evaluates each disputed category of records separately to determine whether Plaintiffs are entitled to inspection under the statutory framework, including the heightened requirements applicable to records outside the statute's enumerated categories.

---

[32] 8 Del. C. § 220(b)(2).

[33] 8 Del. C. § 220(c).

[34] 8 Del. C. § 220(f).

[35] 8 Del. C. § 220(g)(2); 8 Del. C. § 220(g)(3).

**B.      Plaintiffs Have Established a Proper Purpose and a Credible Basis to Investigate Potential Wrongdoing.**

Before the Court may compel inspection, a stockholder must establish that the demand satisfies the statutory prerequisites discussed above. Plaintiffs must show that they seek inspection for a proper purpose and that the record establishes a credible basis from which the Court can infer possible wrongdoing warranting further investigation.[36] Although Plaintiffs bear the burden of satisfying both requirements, the credible-basis standard imposes only a minimal evidentiary burden and has been described as the lowest burden of proof in Delaware.[37] The Court addresses each requirement in turn.

### 1. Plaintiffs Have Established a Proper Purpose.

Plaintiffs contend they seek inspection to investigate potential breaches of fiduciary duty and other wrongdoings arising from Dayforce's Merger.[38]

---

[36] *See* 8 Del. C. § 220(b)(2)(a).

[37] *AmerisourceBergen Corp. v. Lebanon Cnty. Employees' Ret. Fund*, 243 A.3d 417, 431–32 (Del. 2020) ([U]nder Section 220, a stockholder who wishes to investigate corporate wrongdoing must present a credible basis from which the court can infer that wrongdoing may have occurred. It bears repeating that this test 'reflects judicial efforts to maintain a proper balance between the rights of shareholders to obtain information based upon credible allegations of corporation mismanagement and the rights of directors to manage the business of the corporation without undue interference from stockholders.' Having struck that balance, this Court has not required stockholders to prove that the wrongdoing they seek to investigate is actionable. To the contrary, we have stated that a stockholder is not required to prove that wrongdoing occurred, only that there is 'possible mismanagement that would warrant further investigation.'").

[38] D.I. 13 at 2.

11

Investigating potential wrongdoing constitutes a proper purpose under Section 220 when that purpose is reasonably related to the stockholder's interest as a stockholder.[39]

Here, Plaintiffs' demands articulate a proper purpose. Plaintiffs seek to investigate whether Dayforce's fiduciaries complied with their disclosure and fiduciary obligations during the sale process.[40] In particular, Plaintiffs question whether the Proxy accurately disclosed the nature and timing of discussions concerning senior management's anticipated post-closing employment and whether the Proxy's description of the Board's deliberative process is consistent with the formal corporate record.[41] Plaintiffs' asserted concerns center on several issues. First, Plaintiffs point to the Proxy's representation that none of Dayforce's executive officers discussed post-closing employment with Thoma Bravo before execution of the Merger Agreement.[42] Plaintiffs contend that disclosure is difficult to reconcile with contemporaneous statements that Dayforce executives were expected to remain after the transaction, Ossip's public statements that "[t]his will continue to be fun!!" and "I'm going nowhere," the Proxy's discussion of executive "Replacement

---

[39] 8 Del. C. § 220(b).

[40] D.I. 13 at 3–4, 30.

[41] *Id*. at 4, 52.

[42] *Id*. at 31.

Awards," and evidence that Thoma Bravo sought to partner with the existing team from the outset of the transaction.[43]

Second, Plaintiffs identify inconsistencies between the Proxy's narrative describing the Merger process and the Board's formal minutes, including the existence of executive sessions that Plaintiffs contend are not fully reflected in the corporate record.[44] According to Plaintiffs, these circumstances warrant further investigation into whether the Proxy accurately described the Board's deliberations and the events leading to the Merger.[45]

Those are quintessential Section 220 purposes. Investigating whether directors and officers complied with their fiduciary duties and whether stockholders received accurate disclosures in connection with the sale of a corporation is reasonably related to Plaintiffs' interests as stockholders. The Court concludes that Plaintiffs have established a proper purpose under Section 220.

### 2. Plaintiffs Have Established a Credible Basis to Investigate Potential Wrongdoing.

Having determined that Plaintiffs seek inspection for a proper purpose, the Court next considers whether Plaintiffs have established a credible basis from which the Court may infer possible wrongdoing. The credible-basis standard is the lowest

---

[43] *Id*. at 31, 35, 43–45.

[44] *Id*. at 55–60.

[45] *Id*. at 42, 55.

13

burden of proof in Delaware.[46] It does not require Plaintiffs to prove that fiduciary misconduct occurred or even that wrongdoing is more likely than not. Rather, Plaintiffs need only present some evidence from which the Court can infer a credible possibility of wrongdoing that would further warrant an investigation.[47] Here, Plaintiffs satisfy that burden.

Plaintiffs identify inconsistencies between the Proxy's disclosures concerning post-closing employment and contemporaneous statements by Dayforce's senior management and Thoma Bravo.[48] Plaintiffs point to alleged discrepancies between the Proxy's narrative describing the Board's consideration of the Merger and the formal Board minutes documenting portions of that process.[49] Considered together, these circumstances provide a credible basis to investigate whether Dayforce's fiduciaries fulfilled their disclosure and fiduciary obligations in connection with the Merger.

With respect to post-closing employment, the Proxy affirmatively represents that none of Dayforce's executive officers discussed or entered into any agreement regarding post-closing employment with Thoma Bravo before the execution of the

---

[46] *Seinfeld v. Verizon Commc'ns, Inc.*, 909 A.2d 117, 123 (Del. 2006).

[47] *Id.*

[48] D.I. 13 at 55–60.

[49] *See generally* D.I. 13 at 31–35, 43–45, 55–60.

Merger Agreement.[50] Yet the record reflects that immediately following the announcement of the transaction, David Ossip publicly made several inconsistent statements previously discussed. The record further reflects that Thoma Bravo viewed retaining Dayforce's existing management team as an important component of the transaction.[51] These facts provide some evidence supporting Plaintiffs' request to investigate whether discussions regarding management continuity occurred *before* the execution of the Merger Agreement.

The record likewise establishes a credible basis to investigate the adequacy of the Board's disclosed deliberation process.[52] Plaintiffs identify several instances in which the Proxy's description of the Merger negotiations differs from what appears in the formal Board minutes.[53] Plaintiffs also point to Board meetings at which executive sessions occurred without separately memorialized minutes.[54] These asserted gaps provide a sufficient factual predicate to inquire whether the formal record fully reflects the Board's consideration of the transaction and the information presented to it throughout the sale process. Dayforce responds that the alleged discrepancies are either immaterial or reflect Plaintiffs' attempt to manufacture

---

[50] D.I. 13 at 44.

[51] D.I. 17 at 11–15.

[52] D.I. 13 at 55–60.

[53] *Id*. at 44; D.I. 17 at 22–23.

[54] *See* D.I. 13 at 36, 55–60.

inconsistencies where none exist.[55]   At this stage, the Court does not resolve competing factual inferences or determine whether fiduciary misconduct actually occurred.   The question is simply whether Plaintiffs have presented sufficient evidence to warrant further investigation.  They have.

Accordingly, the Court concludes that Plaintiffs have established a credible basis to investigate potential wrongdoing in connection with the Merger.

### C.   Plaintiffs are Entitled to Inspect Certain, But Not All, of the Requested Additional Records.

Having concluded that Plaintiffs have established both a proper purpose and a credible basis to investigate potential wrongdoing, the Court considers the scope of inspection to which Plaintiffs are entitled. The fact that Plaintiffs have established a proper purpose and a credible basis to investigate potential wrongdoing does not automatically entitle them to every category of documents requested in their demands.   Under Section 220(g), a stockholder seeking records beyond the statute's enumerated categories must establish a compelling need for those materials and prove by clear and convincing evidence that the specific records sought are necessary and essential to further the stockholder's proper purpose.[56]

---

[55]  D.I. 15 at 33–38.

[56]  8 Del. C. § 220(g)(2)–(3).

**1. Plaintiffs Have Not Demonstrated Entitlement to Broad Informal Materials Concerning Ossip's Post-Closing Management Employment.**

Plaintiffs seek production of informal Board and officer-level materials concerning the timing and substance of discussions between Thoma Bravo and David Ossip regarding Ossip's anticipated post-closing employment.[57] The request for informal board and officer-level communications regarding anticipated post-closing roles for senior management, including when and how Mr. Ossip confirmed continued service, falls within the non-enumerated lane of Section 220(g)(2)–(3). Plaintiffs therefore must demonstrate a compelling need and prove by clear and convincing evidence that the specific informal communications sought are necessary and essential to investigate the asserted disclosure and process concerns.

On this record, Plaintiffs have not carried that burden. Plaintiffs rely principally on pre-amendment decisions such as *Palantir*, *Calgon*, *Squarespace*, *Empire Resorts*, *Whole Earth*, and *SharpSpring*, arguing that informal communications should be produced where formal Board materials do not fully capture discussions of management's post-closing employment or where proxy disclosures are inconsistent with the formal corporate record.[58] But that authority

---

[57] D.I. 13 at 50–54.

[58] D.I. 13 at 50–54; *KT4 Partners LLC v. Palantir Techs. Inc.*, 203 A.3d 738 (Del. 2019); *Inter-Loc. Pension Fund GCC/IBT v. Calgon Carbon Corp.*, 2019 WL 479082 (Del. Ch. Jan. 25, 2019), *aff'd*, 237 A.3d 818 (Del. 2020); *Mich. Elec. Empls.' Pension Fund v. Squarespace, Inc.*, C.A. No. 2024-1041-SEM (Del. Ch. Dec. 3, 2025); *Brown v. Empire*

predates SB 21's express three-lane framework and its clear-and-convincing, compelling-need requirement for non-enumerated materials. Those cases may still inform the credible-basis inquiry and illustrate when informal materials can be appropriate, but they do not displace the amended statute's burdens and tailoring requirement.

Plaintiffs frame their request as targeted, not a "tell me more" request, seeking the specific materials necessary to determine when and how Ossip's anticipated post-closing role was discussed, because in their view, the formal Board materials do not explain when Ossip confirmed he would remain with Dayforce following the Merger.[59] But the question before the Court is not whether additional communications might exist. It is whether Plaintiffs have demonstrated by clear and convincing evidence that the specific informal board and officer-level materials they request are necessary and essential to answer that question. They have not.

The formal board materials, together with the Proxy and the public statements on which Plaintiffs rely, already frame the issue Plaintiffs seek to investigate. Those materials may not definitively resolve when or how Ossip's post-closing role was decided, but Plaintiffs have not shown that the requested informal communications

_Resorts, Inc._, C.A. No. 2019-0908-KSJM (Del. Ch. Feb. 20, 2020); _Dodiya v. Whole Earth Brands, Inc._, C.A. No. 2024-1033-LWW (Del. Ch. Jan. 29, 2025); _Hightower v. SharpSpring, Inc._, 2022 WL 3970155 (Del. Ch. Aug. 31, 2022).

[59] D.I. 13 at 52.

are the only meaningful source of the information, or that the formal record is so deficient that they need to resort to informal Board and officer communications. Defendant produced Board minutes, presentations, and the Proxy itself, all of which permit Plaintiffs to investigate the timing and circumstances surrounding the Merger and Ossip's anticipated post-closing role. Ordering the production of the requested informal communications on this record would exceed what Section 220(g)(2)–(3) requires.

Accordingly, the Court concludes that Plaintiffs have not established a compelling need for the production of informal materials concerning Ossip's post-closing employment because the existing formal materials and Proxy suffice to frame the inquiry and because Plaintiffs have not shown that informal communications are necessary and essential.

### 2. Plaintiffs Have Not Demonstrated That Inspection of Informal Materials to Fill Material Gaps in the Minutes is Warranted.

Plaintiffs seek informal materials to fill perceived gaps in minutes for executive sessions held during the Board meetings on October 29, 2024, February 28, 2025, and May 2, 2025.[60] Plaintiffs contend that the absence of separately memorialized executive-session materials creates gaps in the Board's formal record and prevents Plaintiffs from fully assessing the Board's deliberative process leading

---

[60] D.I. 13 at 55.

to the Merger.[61]  This request, to inspect informal materials to fill gaps in executive-session minutes, would proceed under Section 220(g)(2)–(3) and require clear and convincing proof of a compelling need and necessary-and-essential tailoring.

According to Plaintiffs, the Proxy recounts substantive executive-session discussions at each of those meetings including Ossip's outreach and updates regarding Thoma Bravo's interest, management's reports regarding competing bidder contracts, and ongoing price negotiations that are absent from the minutes produced in response to the demands.[62]  Relying principally on *Whole Earth*, *Squarespace*, *Zendesk*, and *Palantir*, Plaintiffs contend that where a proxy describes deliberations not reflected in the formal minutes, informal Board materials including emails, notes, and other communications may constitute the functional equivalent of missing formal records or otherwise satisfy Section 220(g).[63]

Plaintiffs emphasize the Company's acknowledgment that no separate executive-session minutes exist for some sessions.[64] Plaintiffs characterize this issue as analogous to *Whole Earth*, where the Court ordered production of informal Board and officer-level materials after concluding that the proxy described deliberations

---

[61]  *Id*. at 55–59.

[62]  *Id*. at 56–57.

[63]  *Id*. at 55–59;  *Whole Earth,* C.A. No. 2024-1033-LWW;  *Squarespace, Inc.*, C.A. No. 2024-1041-SEM;  *In re Zendesk, Inc. Section 220 Litig.*, 2023 WL 5496485 (Del. Ch. Aug. 25, 2023);  *Palantir*, 203 A.3d 738.

[64]  D.I. 13 at 57.

from numerous meetings which were not reflected in the minutes.[65]  Plaintiffs

likewise rely on *Squarespace* and *Zendesk*, arguing that minutes containing only

"bland references" of material events cannot satisfy a stockholder's inspection

rights.[66]  Plaintiffs invoke *NVIDIA*, *Empire Resorts*, and *Palantir* for the proposition

that, where formal corporate records fail to document material Board discussions,

inspection may extend to informal materials to bridge those gaps.[67]  According to

Plaintiffs, the same principle applies here because the Proxy recounts substantive

discussions concerning Thoma Bravo's outreach, the Board's authorization for

Ossip to engage with Thoma Bravo, and management's updates regarding price

negotiations and competing bidders, while the formal minutes merely note that the

Board entered an executive session.

Plaintiffs cite cases to support the proposition that a Proxy's narrative can

contribute to a credible basis to investigate potential wrongdoing.  But a Proxy with

greater narrative detail than the Board minutes does not, standing alone, satisfy

Section 220(g)(2)–(3)'s requirement to prove by clear and convincing evidence that

---

[65]  *Whole Earth*, C.A. No. 2024-1033-LWW, Tr. at 22.

[66]  D.I. 13 at 58.

[67]  *See NVIDIA Corp. v. City of Westland Police & Fire Ret. Sys.*, 282 A.3d 1, 27–28 (Del. 2022) (affirming production of informal materials where formal board materials did not address the subject matter of the demand); *Empire Resorts,* C.A. No. 2019-0909-KSJM, at 54–57 (TRANSCRIPT) (ordering electronic communications where formal materials did not fully explain events); *Palantir*, 203 A.3d at 756–58; *Whole Earth*, C.A. No. 2024-1033-LWW, Tr. at 21.

21

non-enumerated records are necessary and essential. Nor does the absence of separate executive-session minutes establish that additional records exist or that emails, notes, or similar informal communications are necessary and essential under Section 220(g). The statute requires a showing tethered to specific records and a demonstration that the information cannot reasonably be obtained from the enumerated materials or their functional equivalents.

On this record, Plaintiffs have not shown by clear and convincing evidence that informal executive-session materials exist and that they are necessary and essential to investigate the alleged discrepancies, where the formal Board materials and the Proxy have already been produced. To permit inspection based largely on speculation that executive session discussions *may* contain additional relevant information would be inappropriate and would not satisfy Section 220(g)'s heightened burden.

### 3. Plaintiffs Are Entitled to Inspect Forecasts.

Plaintiffs seek production of the short- and long-range plans and related financial forecasts that were provided to and reviewed by the Board at the October 29, 2024, January 30, 2025, February 28, 2025, and May 2, 2025 meetings.[68] According to Plaintiffs, these materials are necessary to evaluate the information available to the Board when it considered the Merger and to assess whether the Proxy

---

[68] D.I. 13 at 60.

accurately described the Board's deliberative process.[69]  Dayforce responds that it has produced the formal books and records concerning the Merger, including the financial information presented to the Board when considering the Merger.[70]

Here, Plaintiffs are entitled to inspect these materials.  Those forecasts are within the scope of inspection because they reflect the financial information actually presented to the Board in connection with the Merger and are necessary and essential to evaluate the Board's deliberations and the financial analyses disclosed to stockholders.  The Court orders production of the short and long-range plans and related financial forecasts provided to and reviewed by the Board at the October 29, 2024, January 30, 2025, February 28, 2025, and May 2, 2025 meetings, as identified in the Proxy.  Those forecasts informed the Board's consideration of the transaction and the financial analyses performed in connection with the Merger.

Accordingly, those forecasts are necessary and essential for Plaintiffs to evaluate the information available to the Board satisfying Section 220(g).

## IV.  CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiffs are entitled to inspect certain books and records consistent with this Report but have not established an entitlement to all categories of records requested under Section 220(g).

---

[69]  *Id*. at 60–61.

[70]  D.I. 15 at 52.

Accordingly, judgment should be entered in favor of Plaintiffs in part and in favor of Defendant in part. Inspection is granted for the forecasts provided to and reviewed by the Board at the October 29, 2024, January 30, 2025, February 28, 2025, and May 2, 2025 meetings. Inspection is denied as to informal post-closing employment communications and informal executive-session materials because Plaintiffs have not met § 220(g)(2)–(3)'s compelling-need, clear-and-convincing standard.

This is the Court's post-trial final report and expedited exceptions may be filed within three days under Court of Chancery Rule 144. If no exceptions are taken, the parties shall meet and confer regarding the additional production required by this final report and submit a proposed implementing order consistent with its terms within one week thereafter.